IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE SIPE,<br><br>           Plaintiff,<br><br>v.<br><br>TOYS "R" US-DELAWARE, INC.,<br><br>           Defendant. | Case No. 15-cv-1037-AJS<br><br><br><br>Filed Electronically |

**SECOND AMENDED COMPLAINT FOR PERMANENT INJUNCTION
REQUIRING CHANGES TO CORPORATE POLICY
AND THE ELIMINATION OF DIGITAL ACCESS BARRIERS
PURSUANT TO 42 U.S.C. § 12188(a)(2) AND FOR DECLARATORY RELIEF
PURSUANT TO 8 U.S.C. § 2201, *et seq.* AND 42 Pa.C.S. §§ 7531, *et seq.*__**

Michelle Sipe ("Plaintiff") seeks a permanent injunction requiring a change in Toys "R" Us-Delaware, Inc. ("Defendant" or the "Company") corporate policies, procedures and practices to cause Defendant's websites to become, and remain, accessible; and declaratory and equitable relief requiring Company to purge personal information acquired from Plaintiff and Company's tracking devices deposited on her computer without her authorization; and in support thereof asserts as follows:

**INTRODUCTION**

1.     Plaintiff Michelle Sipe brings this action against Defendant and asserts that its websites are not accessible to blind and visually impaired consumers, violating Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA").  Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies related to its web-

based technologies so that Defendant's websites will become, and will remain, accessible. The websites at issue are: www.toysrus.com and www.babiesrus.com (collectively the "Websites").

2. Further, Plaintiff seeks declaratory and equitable relief requiring Company to purge personal information acquired from Plaintiff through Company's unauthorized use of her computer and personal information, arising out of her attempts to navigate Company's Websites.

3. While the increasing pervasiveness of digital technologies present an unprecedented opportunity to increase access to information, goods and services for people with perceptual or motor disabilities, online businesses often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.

4. Blind and visually impaired consumers must use screen reading software or other assistive technologies in order to access website content and functions. Defendant's Websites contain digital barriers which limit the ability of blind and visually impaired consumers to access the sites.

5. Since August 27, 2011, Plaintiff has patronized Defendant's Websites, and intends to continue to patronize Defendant's Websites. However, unless Defendant is required to eliminate the access barriers at issue, and required to change its policies so that access barriers do not reoccur on Defendant's Websites, Plaintiff will continue to be denied full access to those Websites as described, and will be deterred from fully using Defendant's Websites.

6. The ADA expressly contemplates the type of injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> [i]n the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities….Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy. . .

42 U.S.C. § 12188(a)(2).

7.  Because Defendant's Websites have never been accessible and because Defendant does not have, and has never had, corporate policies, procedures and practices that are reasonably calculated to cause its Websites to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

a) that Defendant retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its Websites so that they comply with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA");

b) that Defendant work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

c) that Defendant work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's Websites continue to comply with WCAG 2.0 AA on an ongoing basis;

d) that Defendant work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendant's Websites continue to comply with WCAG 2.0 AA on an ongoing basis;  and,

e) that Defendant work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Websites, along with an e-mail address and toll free phone number to report accessibility-related problems.[1]

---

[1] Web-based technologies often employ features and display content that are modified daily, hourly, or even dynamically, based on characteristics of an individual user or user device. Because of these ongoing changes, a one-time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies, procedures and practices related to its implementation of web-based technologies.  To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies, procedures and practices related to web-based technologies have been changed in a meaningful manner that

3

**JURISDICTION AND VENUE**

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. § 12188.

9. Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

10. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial in which a substantial part of the acts and omissions giving rise to the claims occurred.

**PARTIES**

11. Plaintiff, Michelle Sipe, is and, at all times relevant hereto, has been a resident of the Commonwealth of Pennsylvania, residing within this judicial district. Plaintiff is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

12. Defendant Toys "R" Us-Delaware, Inc. is a Delaware corporation with headquarters located at 461 From Road, Paramus, NJ 07652. Defendant owns, operates and maintains retail brick and mortar stores across the United States, including within the Commonwealth of Pennsylvania. Defendant's retail stores offer goods and services to the public. Defendant also offers goods and services to the public through the Websites. Defendant's brick and mortar stores and websites are integrated and are public accommodations pursuant to 42 U.S.C. § 12181(7). The integration of Company's offline and online operations is

---

will cause the website to remain accessible, the website must be reviewed on periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

reflected in its online Privacy Policy at

www.toysrus.com/helpdesk/index.jsp?display=safety&subdisplay=privacy, which states:

> By visiting a Toys"R"Us Site or Retail Store, participating in our rewards program or otherwise interacting with Toys"R"Us, you are accepting the practices described in this Privacy Policy.

## FACTUAL BACKGROUND

### Inaccessibility of Company's Websites

13. The Internet has become a significant source of information and a means for conducting everyday activities such as shopping, banking, etc. for both sighted and blind and visually-impaired persons, as well as individuals with other perceptual or motor disabilities.

14. Blind individuals may access websites by using keyboards in conjunction with screen reader software that converts text to audio.  Screen reader software provides the primary method by which a blind person may independently use the Internet.  Unless websites are designed to be read by screen reader software, blind individuals are unable to fully access websites and the information, products and services available through the sites.

15. The international website standards organization, W3C, has published WCAG 2.0 AA.  WCAG 2.0 AA provides widely accepted guidelines for making websites accessible to individuals with disabilities.  These guidelines have been endorsed by the United States Department of Justice and numerous federal courts.

16. Through its Websites, Defendant offers products for online sale, home delivery and purchase at Defendant's retail stores.  Defendant's Websites also help users locate stores, view and purchase products, read product descriptions and prices, create and read product reviews, sign up for email lists and perform a variety of other functions. Defendant's offerings include products for children with disabilities and a "Toy Guide for Differently Abled Kids"

(www.toysrus.com/shop/index.jsp?categoryid= 3261680&ab= \TRU_Footer:Utility1:5:Toy-Guide-for-Differently-Abled).

17. Defendant's integration of its online and offline operations is reflected in its statement in its online privacy policy at www.toysrus.com/helpdesk/index.jsp?display=safety&subdisplay=privacy, which asserts that it applies to both online and offline customer interactions:

> By visiting a Toys"R"Us Site or Retail Store, participating in our rewards program or otherwise interacting with Toys"R"Us, you are accepting the practices described in this Privacy Policy.

18. Plaintiff is permanently blind and uses screen reader software in order to access the Internet and read website content.

19. Despite several attempts to use and navigate www.toysrus.com, Plaintiff has been denied the full use and enjoyment of the facilities, goods and services available on www.toysrus.com as a result of access barriers on the site.

20. The barriers at www.toysrus.com have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff from attempting to use Defendant's website.

21. The access barriers at www.toysrus.com, and Defendant's other websites, include but are not limited to, the following:

  a) The lack of Alternative Text or a text equivalent. Alternative Text is invisible code embedded beneath an image on a website. Web accessibility requires that Alternative Text be coded with each picture so that a screen reader can speak the Alternative Text where a sighted user sees pictures. Alternative Text does not change the visual presentation, but instead a text box will pop up when the mouse moves over the picture. The lack of Alternative Text prevents screen readers from accurately vocalizing a description of website images. As a result, visually impaired individuals are unable to determine what is on the website, browse the sites, look for store locations, review discount programs and specials and/or make any purchases.

  b) Redundant links. When adjacent links go to the same location (such as a linked product image and an adjacent linked product name that go to the same product

    page) this results in additional navigation and repetition for keyboard and screen reader users.

    c) No-script elements. Content within no-script is presented if JavaScript is disabled. Because nearly all users (including users of screen readers and other assistive technologies) have JavaScript enabled, no-script cannot be used to provide an accessible version of inaccessible scripted content.

  22. In addition, on some occasions, Defendant has caused a "popover" solicitation to be superimposed on the web page when an individual first visits a Website. The popover contains an offer message, such as, "Something great is waiting for you...We'll send incredible savings, deals and more right to your mobile phone." The popover text solicits the individual to enter a mobile phone number and agree to receive Defendant's messages. While the popover solicitation is displayed, the web page to which the individual navigated is darkened, such that the presence of the popover and its effect on the web page pose even further barriers to access than those already affecting visitors to the Websites.

  23. If www.toysrus.com (and Defendant's other Websites) were accessible, Plaintiff could independently shop for and research products via Defendant's websites.

  24. Though Defendant has centralized policies regarding the maintenance and operation of its Websites, Defendant has never had a plan, policy or practices that are reasonably calculated to make its Websites fully accessible to, and independently usable by, blind people.

  25. Without injunctive relief, Plaintiff and other blind individuals will continue to be unable to independently use www.toysrus.com (and Defendant's other Websites), in violation of their rights under the ADA.

**Company's Unauthorized Use of Plaintiff's Computer and Personal Information**

  26. The allegations of this section apply to Defendant's conduct over the past four years.

27. When any individual navigates to a web page on a Website of Defendant, before the web page has even finished being downloaded to and displayed on the individual's computer, Defendant stores and accesses data in cookies, local storage, and cache storage on the individual's computer; and Defendant causes approximately 50 third parties to store and access data in cookies, local storage, and cache storage on the individual's computer.

28. The purpose of many, if not the majority of the items stored and accessed by Defendant and third parties on an individual visitor's computer is to track and profile the individual's browsing activities across the web, over time, and to enable Defendant and third parties to share such tracking information pursuant to their commercial agreements with each other and their agents and representatives.

29. In addition, Defendant and the third parties whose tracking it facilitates enhance their tracking information by obtaining further information about the individual from other parties, including information about the individual's offline purchases and consumer demographic characteristics.

30. Plaintiff did not authorize Defendant to use her computer to track and profile her on its Website or other websites, and did not authorized Defendant to cause third parties to do so.

31. Defendant purports to engage in these data storage, collection, and sharing practices pursuant to the individual's agreement to Defendant's Website Terms and Conditions and Privacy Policy posted on its Websites.

32. Defendant's Websites state that an individual's use of a Website constitutes the individual's agreement to Defendant's Terms and Conditions and Privacy Policy.

33. However, as alleged above, Defendant engages in these data storage, collection, and sharing practices before any individual, regardless of ability, can access and read Defendant's Website Terms and Conditions and Privacy Policy.

34. Defendant does not require individuals who visit its Websites to scroll through its Terms and Conditions and Privacy Policy or to engage in any action or communication indicating their assent to them.

35. In Plaintiff's case, because of barriers to access on Defendant's Website, Plaintiff had no reasonable notice of or ability to access Defendant's Terms and Conditions and Privacy Policy.

36. In Plaintiff's case, because of barriers to access on Defendant's Website, Plaintiff could not and did not agree to Defendant's Terms and Conditions and Privacy Policy.

## SUBSTANTIVE VIOLATIONS

### FIRST CLAIM FOR RELIEF
(Title III of the ADA, 42 U.S.C. § 12181 *et seq.*)

37. The allegations contained in the previous paragraphs are incorporated by reference.

38. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

39. Defendant's retail stores and integrated websites are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

40. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

41. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations, which is equal to the opportunities afforded to other individuals. 42 U.S.C. §12182(b)(1)(A)(ii).

42. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii); *see also* 28 C.F.R. § 36.303(a).

43. Title III requires that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). The regulation sets forth numerous examples of

10

"auxiliary aids and services," including "…accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision."  28 C.F.R. § 36.303(b).

44.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder.  Plaintiff, who is blind and has a disability that substantially limited the major life activity of seeing within the meaning of 42 U.S.C. §§ 12102(1)(A) and (2)(A), has been denied full and equal access to www.toysrus.com and Defendant's other websites.  She has not been provided services that are provided to other patrons who are not disabled, and/or has been provided services that are inferior to the services provided to non-disabled persons.  Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

45.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## SECOND CLAIM FOR RELIEF
(**Declaratory Relief, 28 U.S.C. § 2201,** *et seq.* **and 42 Pa.C.S. §§ 7531,** *et seq.*)

46.     The allegations contained in the previous paragraphs are incorporated by reference.

47.     Formation of a written contract under Pennsylvania law requires that the parties reach a mutual understanding, exchange consideration, and delineate the terms of their bargain with sufficient clarity.

48.     Regarding any purported terms under which Defendant used and caused third parties to use her computer to store and read tracking information, Plaintiff did not have notice of such terms and did not enter into any agreement with Defendant because, as alleged above in paragraphs 26 through 35, Plaintiff did not and could not have assented to such terms, because

11

the use of her computer and tracking took place before Defendant's web page even finished loading on her computer; and Plaintiff did not and could not have subsequently assented to any such terms because of Defendant's barriers to access.

49.     Defendant's use of Plaintiff's computer to track and profile her and Defendant's causing third parties to do so was without authorization.

50.     As a result of Defendant's unauthorized conduct, Plaintiff has been harmed in the use and alteration of her property for purposes she did not authorize, and in Defendant's and third parties' ongoing and unauthorized collection and subsequent enhancement of personal information about her.

51.     Accordingly, Plaintiff is entitled to the declaratory and injunctive relief requested below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

a.  A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its Websites are fully accessible to, and independently usable by, blind individuals;

b.  A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to bring its Websites into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Websites are fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiff is described more fully in Paragraph 6 above;

    c.       A Declaratory Judgment pursuant to 28 U.S.C. § 2201, *et seq.* and 42 Pa.C.S. §§ 7531, *et seq.* that Defendant's Terms and Conditions and Privacy Policy are unenforceable as to Plaintiff;

    d.       Equitable relief consisting of Defendant's purging of any information from and about Plaintiff that personally identifies Plaintiff or that has been or can be use to identify, recognize, locate, or communicate with her or any device associated with her physically, on the Internet or via mobile communication; and information about family members or other persons associated with Plaintiff that was acquired in whole or in part through the use of information from or about Plaintiff; and any information derived therefrom, including in aggregate form; and including such information acquired from Plaintiff's offline transactions with Defendant or other parties;

    e.       Payment of costs of suit;

    f.       Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

    g.       The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: October 5, 2015

Respectfully Submitted,

/s/ *R. Bruce Carlson*
R. Bruce Carlson
Benjamin J. Sweet
Stephanie K. Goldin
CARLSON LYNCH SWEET &
KILPELA LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 322.9243
Fax: (412) 231.0246
www.carlsonlynch.com

Of Counsel:

Scott A. Kamber (Not Admitted)
David A. Stampley (Not Admitted)
KAMBERLAW, LLC
100 Wall Street, 23rd floor
New York, NY 10005
Phone: 1.212.920.3072
Fax: 1.212.202.6364